**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**JOHNNY GROSE**                                                            **PETITIONER**

**vs.**                                            **CIVIL ACTION NO.:  3:13cv47-MPM-SAA**

**CHRISTOPHER EPPS, et al.**                                        **RESPONDENTS**

**MEMORANDUM OPINION AND ORDER**

Petitioner, Johnny Grose, Mississippi prisoner # 143238, has filed a pro se federal habeas

petition pursuant to 28 U.S.C. § 2254 challenging his state court convictions for sexual battery,

touching a child for lustful purposes, and felony child neglect.  Having considered the

submission of the parties, the State court record, and the law applicable to Petitioner's claims, the

Court finds that the petition should be denied, for the reasons that follow.

**Background Facts and Procedural History**

In 2006, Krystal Jordan, Timothy Jordan, Glenn Grose, and Johnny Grose were indicted

for the sexual battery, gratification of lust, and child neglect of Krystal and Tim's three year-old

daughter, B.J.  Krystal[1] pled guilty to three counts of sexual battery and felony child abuse and

testified against the remaining defendants at their joint trial.[2]  The men were convicted of the

---

[1]  Because several individuals involved in this case share the same surname, the Court
refers to each member of the Jordan and Grose families by their first names.  The Court also
notes that Krystal's mother, identified only as "Gloria" herein, is named in the record as both
"Gloria Hollis" and "Gloria Becerril," due to a change in marital status.  Additionally, the Court
notes that Mrs. Jordan is identified in the transcript as "Cristal," "Kristi," and "Christy", but she
will be designated throughout this Opinion and Order as "Krystal" unless the Court is quoting
from the record.

[2]  Tim filed a motion for severance but was denied.

1

charges.  A brief recitation of the events leading up to their conviction is as follows:

In October 2005, Krystal and Tim Jordan were living in the home of Johnny Grose and Glenn Grose.  The Jordan's children, B.J., the victim in this case, and S.J., her infant sister, lived there as well.  On October 20, 2005, Rhiannon Shaw, employed as a family protection specialist by the Lafayette County Department of Human Services, received an anonymous telephone call reporting the possibility that drug use, prostitution, and child neglect might be occurring in the home.  A few days later, Krystal was arrested on a domestic violence charge involving Tim.  Krystal's mother, Gloria, subsequently picked up both B.J. and S.J.  On October 31, 2005, Gloria reported to Shaw that B.J. "was having problems with potty training; that her bottom was very raw; and she was [making] specific comments about people touching her and had named specific names such a[s] her father, Glenn and Johnny Grose."  Shaw told Gloria not to question B.J. and informed Gloria that she would set up a forensic interview with B.J.[3]

The forensic interview was conducted on November 3, 2005, by Ejeera Joiner of Family Crisis Services.  Shaw sat concealed from B.J.'s view behind a one-way mirror.  During the interview, B.J. reported that Tim, Glenn, and Johnny had touched her "nu-nu" [vagina] with their penises, and she demonstrated the acts using anatomically correct dolls.  Tomiko Mackey, a clinical social worker accepted by the court as an expert in forensic examination, testified that she had observed a DVD of the forensic interview and had some concerns with Joiner's questioning technique, although she agreed that Joiner followed the appropriate protocol.  She observed, however, that B.J. was fairly consistent in her disclosure of the abuse and the persons

---

[3] A DVD of the interview was introduced into evidence and played for the jury at trial. (SCR  vol. 5, p. 406).

2

responsible for it.[4]

Martha Hester Grose, Krystal's maternal grandmother, testified that, following Krystal's October arrest, she and her husband, Larry Grose, went to the Grose home. While there, she reported, B.J. asked to go home with Martha and Larry, and Tim agreed to let her go. She reported that she and Larry took B.J. to a motel room in Bruce, and that B.J. cried after using the bathroom and after sitting down in a bathtub to bathe. Martha recounted that when she asked B.J. if someone had hurt her "down there," B.J. answered, "Yes, Mammaw, Tim and Christy and Johnny and Glen." The next morning, Martha and Larry drove B.J. to Gloria's home and told Gloria what B.J. had said. She reported that Gloria called the Department of Human Services.

Dr. Thomas Fowlkes, a physician specializing in emergency and correctional medicine, treated Krystal while she was incarcerated at the Lafayette County Detention Center. Dr. Fowlkes testified that information obtained from Krystal indicated that she was abusing cocaine, marijuana, and prescription painkillers at the time of her arrest. He reported that he placed Krystal on an antidepressant and an antipsychotic medication. He concluded that Krystal was mildly mentally retarded when he began treating her, and that she had "some organic brain syndrome" or sustained some additional brain damage that rendered her less functional than she was when he began treating her. Dr. Fowlkes stated that Krystal had abused inhalants since her incarceration, which he opined were responsible for her mental deterioration.

Krystal testified that she routinely drank alcohol and abused drugs while married to Tim, and she also admitted that she had a sexual relationship with both Glenn and Johnny. Krystal

---

[4] During the interview, Joiner asked about B.J.'s grandmother, and B.J. stated that her grandmother had touched her, as well. There was testimony at trial to indicate that B.J. did not refer to either Martha or Gloria as "Grandmother."

reported that when she was "big" and pregnant with S.J., Tim suggested that he have sex with three year-old B.J. Krystal testified that she, Tim, and B.J. all got into the shower together at their home, and that she held B.J. up while Tim had sexual intercourse with B.J., who screamed and cried for help during the assault. She reported that in later sexual assaults, she and Tim gave B.J. a Lortab, a prescription painkiller, to help keep her calm. After S.J. was born, the family moved to the Grose trailer. There, Krystal maintained, Tim continued to abuse B.J. She testified that Glenn learned of the abuse and asked to have sex with B.J., to which she consented.

Krystal testified that Johnny learned that the other two men were having sex with B.J. and asked to have sex with her, as well. Krystal reported that she consented and gave B.J. a Lortab. Johnny suffers from rheumatoid arthritis and is confined to a wheelchair. Krystal testified that when the drug took effect, she took off B.J.'s clothes and Johnny's clothes. She reported that Johnny got into his hospital bed without assistance. She stated that she put B.J. on top of Johnny, who was lying on his back. She reported that when Johnny began having sex with B.J., she went outside to smoke. Krystal testified that Johnny later called for her, and that she went inside and "cleaned up" B.J. She also stated that she performed fellatio on Johnny to show B.J. how to do it, and that afterwards, B.J. performed the act on Johnny.

On cross-examination, the defense presented letters Krystal wrote to the defendants while they were incarcerated. In these letters, some of which she denied writing, Krystal maintained the innocence of the defendants and herself. She was also questioned about her plea agreement, and, as the State court noted, she "had difficulty answering the questions." She acknowledged, however, that she received a plea deal. She also stated that she did not think the deal would be revoked if she refused to testify against the defendants.

4

Pammie Davidson, a licensed social worker employed as the victim's assistance coordinator for the district attorney's office, testified that she met with Krystal between ten and fifteen times between October 2007 and September 2008 and helped prepare her for trial. Over the objection of defense counsel, she testified about the prior statements Krystal made to her regarding the defendants' abuse of B.J.

Pediatric medicine expert, Dr. Tanya King, testified that she first examined B.J. on November 3, 2005. She found inflammation in B.J.'s genital area, as well as bruising on both sides of her vagina. While B.J.'s hymen was not torn, Dr. King noted that a child's vagina is small and the hymen recessed, making total penetration difficult for the perpetrator. She also testified that B.J.'s anus was abnormally dilated, and that the injury was caused by the repeated penetration of an object, which had occurred over a period of months. Despite having performed between 200 and 300 examinations on victims of child sexual abuse, Dr. King stated she had never seen another child with an anus so damaged.

Krystal's mother, Gloria, testified that when Martha brought B.J. to Gloria's home and told her that B.J. had complained of pain during urination, Gloria examined B.J.'s vaginal area and found it "red and raw." She reported that B.J. told her on several occasions that "Kristi and Tim and Glen and Johnny had hurt her."[5] Gloria reported the abuse to the Department of Human Services. Gloria testified that after the allegations of sexual abuse were made, B.J. began to masturbate in public, attempt to grab peoples' private areas, request that someone touch her or request to touch someone, abuse the family dog, physically assault S.J. and attempt to fondle her, simulate oral sex with food, and eat and smear her own feces.

---

[5] B.J. also named Larry Grose as a perpetrator sometime later.

5

Clinical social worker, Robin Smith, testified as B.J.'s treating therapist.  She began treating B.J. shortly after the child turned four years-old, while she was still in Gloria's custody. She testified that B.J.'s behavior, as reported by Gloria, showed a desperate attempt for attention. She reported that B.J. indicated that the defendants touched her in her vaginal and anal areas. Smith also testified that B.J. was very provocative in her behavior, even with Smith.  She reported that B.J. would stare at people inappropriately and attempt to touch other children inappropriately, and that she would eat and/or smear her feces.  Smith testified that she had never seen a child eat and/or smear her feces that was not sexually abused.  She maintained that B.J. would revert to these behaviors when questioned about the abuse.  Smith diagnosed B.J. with post-traumatic stress syndrome, both the inattentive and hyperactive types of Attention Deficit Hyperactive Disorder, and reactive attachment disorder.  She also determined that B.J. suffered trichotillomania, a disorder manifested by the obsessive pulling out of her own hair.  Smith testified that B.J. consistently testified that her parents, Glenn, Johnny, and Larry touched her vagina.

Both Tim Jordan and Glenn Grose denied having had any sort of sexual contact with B.J., as did Johnny Grose.  In his case-in-chief, Johnny presented several witnesses who testified as to his physical condition and his interactions with B.J.  Sherry Powell, Johnny's nurse, testified that Johnny's condition made it difficult for him to use his hands.  Margie Tidwell, Johnny's sister, also relayed information about Johnny's physical condition, and she disclosed that she made the initial report to DHS because of Krystal's neglect of her children and sexual relationship with the Grose brothers.  Mary Sue Williams, an ex-girlfriend of Johnny's, testified that during their sexual intimacies, she had to "do all of the work."  Johnny testified that he routinely gave Krystal

money in order to buy milk and diapers for the children. He denied having any sexual contact with B.J.

Following a jury trial in the Circuit Court of Lafayette County, Mississippi, Petitioner was convicted of two counts of sexual battery, one count of touching a child for lustful purposes, and one count of felony child neglect. On October 14, 2008, he was sentenced to serve life imprisonment for each of the sexual battery convictions, ten years for touching a child for lustful purposes, and ten years for felony child neglect, all in the custody of the Mississippi Department of Corrections.[6]

Petitioner appealed his convictions and sentences. On September 14, 2010, the Mississippi Court of Appeals affirmed the judgment of the trial court. *See Jordan, Grose, and Grose v. Sate*, 80 So. 3d 817 (Miss.Ct.App. 2010), *reh'g denied*, June 7, 2011, *cert. granted*, Sept. 8, 2011, *cert. dismissed*, Feb. 16, 2012 (Cause No. 2008-KA-01761-COA). Petitioner did not seek post-conviction collateral review in State court. He filed the instant petition on or about February 19, 2013, raising the following six issues, as paraphrased by the Court[7]:

> Ground I: The trial court erred in admitting minor victim's statements in violation of the Confrontation Clause.

---

[6] At trial and on direct appeal, Petitioner had two co-defendants: Glenn Grose and Timothy Jordan. The Court notes that both co-defendants have federal habeas petitions currently pending before the Court. *See, e.g., Glenn Grose v. Streeter, et al.*, Cause No. 3:12cv46-MPM-DAS; *Timothy Jordan v. State of Mississippi, et al.*, Case No. 3:12cv105-GHD-JMV.

[7] Petitioner filed his petition raising a seventh issue - the performance of trial and appellate counsel - which has not been exhausted. After the Court found Petitioner failed to show good cause for failing to exhaust this claim prior to filing for federal habeas relief, Petitioner was ordered to amend his petition to present only exhausted claims. (*See* doc. entry no. 9). Petitioner filed a motion to amend and was allowed to withdraw his unexhausted claim, and Respondents were ordered to answer the remaining exhausted grounds.

Ground II:  The trial court erred in allowing the prosecution to lead a witness' testimony.

Ground III:  The trial court erred in allowing the prosecution to call certain witnesses to testify for the State.

Ground IV:  The trial court erred in allowing the state to amend the indictment to expand the time in which the alleged offenses occurred.

Ground V:  The evidence of sexual battery was insufficient and against the weight of the evidence.

Ground VI:  Incorporation by reference of any relevant arguments made in the briefs submitted by Glen Grose and/or Timothy Jordan.

## Legal Standard

The Court's review of Petitioner's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because his federal habeas petition was filed after the statute's effective date.  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence.  *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Where a state court has refused to hear a prisoner's claim due to his failure to fulfill a state procedural requirement, federal habeas is precluded if the state's procedural rule is "independent and adequate to support the judgment."  *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)).  Petitioner bears the burden of demonstrating that the rule is not "strictly or regularly" followed in order to evade application of

the bar. *Id.* He may otherwise obtain review of a claim barred by a state procedural rule if he

can demonstrate cause and actual prejudice for the default, or that a "fundamental miscarriage of

justice" would result from refusal to consider his claims. *Coleman v. Thompson*, 501 U.S. at

750. In order to avail himself of the "fundamental miscarriage of justice" exception, he must

show actual innocence - that, "as a factual matter, [] he did not commit the crime of conviction."

*Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (citation omitted); *Fairman v. Anderson*, 188 F.3d

635, 644 (5th Cir. 1999).

## Discussion

### 1. Confrontation Clause

Petitioner claims that the trial court's admission of the victim's statements violated his

rights under the Confrontation Clause to the United States Constitution. B.J.'s statements were

allowed into evidence under Mississippi's tender-years exception to the hearsay rule. He alleges

that Mississippi's tender-years exception was inappropriately applied in his case by the trial

court, because B.J., who was not unavailable to testify, made unreliable and testimonial

statements during the interview.

The Court first addresses Petitioner's claim that the trial court erred in finding that B.J.

was an "unavailable" witness and that her statements were admissible under the tender-years

exception. The tender-years exception provides:

> A statement made by a child of tender years describing any act of sexual contact
> performed with or on the child by another is admissible in evidence if: (a) the
> court finds, in a hearing conducted outside the presence of the jury, that the time,
> content, and circumstances of the statement provide substantial indicia of
> reliability; and (b) the child either (1) testified at the proceedings; or (2) is
> unavailable as a witness: provided, that when the child is unavailable as a witness,
> such statement may be admitted only if there is corroborative evidence of the act.

9

Miss. R. Evid. 803(25).

A child is an "unavailable" witness under Mississippi Rule of Evidence 804(a)(6) if there is a "substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused." Miss. R. Evid. 804 (a)(6).

On direct appeal, the Mississippi Court of Appeals found that the trial court did not abuse its discretion in determining that B.J. was unavailable as a witness, as the victim's therapist opined that "further questioning about the events would negatively affect [the child's] mental health." *Grose*, 80 So. 3d. at 827-28. It also noted that the trial court conducted an examination to determine whether B.J.'s "statements possessed substantial indicia of reliability" under the twelve factors listed in the comment to Rule 803(25). *Id*. at 828. Overall, the trial court determined that B.J.'s statements possessed substantial indicia of reliability, such that there was substantial evidence to support the trial court's ruling. *Id*. The court also found that Petitioner's Sixth Amendment rights were not violated, as the victim's statements to Smith were made during the course of treatment were not testimonial in nature. *Id*.

First, the Court notes that the trial court's admission of B.J.'s statements under the tender-years exception is an evidentiary ruling, which is not generally cognizable on federal habeas review. The evidentiary rulings of a state court present issues of state law and "present cognizable habeas claims only if they run afoul of specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)). Erroneously admitted testimony forms the basis for federal habeas relief only when the prejudicial testimony "played 'a crucial, critical,

10

and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656

(5ᵗʰ Cir. 1999). Here, the trial court analyzed the evidence in light of the factors indicated by

Rule 803(25), and it found that the defendants were reliably implicated. (*See* SCR vol. 4, 201).

Petitioner does not show an error by the trial judge, much less one that constitutes a denial of

fundamental fairness.

Next, the Court considers Petitioner's argument that the testimony violated his

confrontation rights. The Confrontation Clause to the United States Constitution provides a

criminal defendant the right to confront witnesses against him. U.S. Const. amend. VI. In

*Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that testimonial out-of-

court statements are inadmissible unless the witness is unavailable and the defendant has had an

opportunity to cross-examine the witness about the statements. *Id*. at 68. Although no precise

definition of "testimonial" was offered by the Court, it did note that the term would apply to

sworn testimony, police interrogations, or formal statements to government officials. *Id*. at 51

The Court further delineated the difference between nontestimonial and testimonial hearsay in

*Davis v. Washington*, 547 U.S. 813 (2006), holding:

> Statements are nontestimonial when made in the course of police interrogation
> under circumstances objectively indicating that the primary purpose of the
> interrogation is to enable police assistance to meet an ongoing emergency. They
> are testimonial when the circumstances objectively indicate that there is no such
> ongoing emergency, and that the primary purpose of the interrogation is to
> establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 22. In *Michigan v. Bryant*, 131 S. Ct. 1143 (2011), the Supreme Court held that "[w]hen a

court must determine whether the Confrontation Clause bars the admission of a statement at trial,

it should determine the 'primary purpose of the interrogation' by objectively evaluating the

statements and actions of the parties to the encounter, in light of the circumstances in which the

11

interrogation occurs." *Id.* at 1162. The "objective evaluation" mandated by *Bryant* has several

factors, including the parties' perception that an emergency is ongoing; the formality of the

encounter between the victim and interrogator; the purpose that reasonable participants would

have had given the circumstance; and actions as to the primary purpose of the interrogation. *See*

*id.* at 1160. If the primary goal is to establish events relevant for possible future criminal

prosecution, then the statements are testimonial. *Id.* at 1157.

On direct appeal, the Mississippi Court of Appeals found that the statements made by B.J.

during the forensic interview, which was instigated by the Department of Human Services, did

not arise due to a police investigation and were non-testimonial in nature. *Grose*, 80 So. 3d at

828. It also determined that B.J.'s statements to Smith were made during the course of therapy

and were likewise non-testimonial. *Id.* It further found that even if the forensic interview were

testimonial in nature, however, its admission would be harmless, as Krystal, "a participant and a

direct eyewitness to the sexual abuse," identified the defendants as perpetrators. *Id.*

Clearly, B.J.'s statements were hearsay, and it is not disputed that the defendants did not

have an opportunity to cross-examine her at any time prior to trial. In this case, the forensic

interview statements were not taken to meet an "ongoing emergency" — B.J. was in the care of

her grandparents, not her alleged abusers, when the statements were made. *See Davis v.*

*Washington*, 547 U.S. 813, 822 (2006) (noting that "[s]tatements are nontestimonial when made

in the course of police interrogation under circumstances objectively indicating that the primary

purpose of the interrogation is to enable police assistance to meet an ongoing emergency"). The

forensic interview took place after Gloria contacted the Department of Human Services, which

contacted Family Crisis Services. The forensic interviewer was a trained professional, and she

followed a formal interviewing technique in order to assess whether B.J. had been abused. The majority of her questions focused on whether B.J. could identify her abusers and what acts they committed. This interview was memorialized on a DVD and turned over to law enforcement. At trial, Mrs. Shaw testified that the point of a forensic interview is to obviate later questioning of the child by the police or the district attorney. (SCR vol. 5, 429). Therefore, it appears to the Court that the primary purpose of the forensic interview was to identify B.J.'s abusers and identify the acts for which they could be held responsible in a future criminal prosecution. Evaluating the circumstances surrounding the forensic interview, the Court concludes that the recording of the interview was "procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Bryant*, 131 S. Ct. at 1155. The Court finds that the conclusion to the contrary, that B.J.'s statements during the forensic interview were not testimonial merely because they were conducted by a nonprofit entity, is an unreasonable application of clearly established federal law.

However, Confrontation Clause violations are subject to a harmless error analysis. *Fratta v. Quarterman*, 536 F.3d 485, 508 (5th Cir. 2008) (citation omitted). Under a harmless error analysis, a habeas petitioner is not entitled to federal habeas relief unless he can establish that "the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted). In this instance, Petitioner was identified as a perpetrator through Krystal's testimony, Martha's testimony, Gloria's testimony, and Smith's testimony. B.J.'s statements to her family members and her therapist were nontestimonial. *See, g.g, Hobgood v. Epps*, No. 3:08CV24, 2011 WL 1297063 at *4 (S.D. Miss. March 31, 2011) (collecting cases). Therefore, B.J.'s statements in the forensic interview

13

were cumulative and did not have a substantial or injurious effect on the jury's verdict. Habeas relief is not warranted on this claim.

## 2. Improper Leading

In his second ground for habeas relief, Petitioner argues that the trial court erred in allowing the prosecution "to improperly lead Krystal Jordan through an excessive part of her testimony." On direct appeal, the Mississippi Court of Appeals found that a review of the record showed that the State asked Krystal leading questions in an attempt to get her to describe details of events, and the trial court was in the best position to determine whether leading questions were necessary to develop Krystal's testimony. *Grose*, 80 So. 3d at 828-29. It held that "[b]ecause of Krystal's diminished mental capacity, the trial court allowed the State to ask her leading questions. Based upon our review of the record, we cannot find that the trial court abused its discretion." *Id*.

The admissibility of evidence is a matter of state law, and federal habeas courts do not intervene in such matters unless "the state court error is sufficiently egregious to render the entire trial fundamentally unfair." *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir. 1989); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (holding that federal habeas corpus relief will not be granted for mere errors of state law). Rather, federal habeas corpus relief lies for erroneous state evidentiary rulings only where "the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987).

Petitioner fails to identify any particular statements by Krystal that he contends were improperly suggested by the prosecution. A Mississippi evidentiary rule provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary

14

to develop his testimony." Miss. R. Evid. 611(c). The Court notes that the trial court allowed

the prosecution to ask Krystal leading questions during its direct examination in light of proof of

Krystal's diminished mental capacity. (*See* SCR vol. 6, 563). The Court finds that the trial

court's ruling does not violate Petitioner's constitutional rights, nor has Petitioner demonstrated

that the ruling rendered his trial fundamentally unfair. The decision rejecting this claim is not

contrary to, nor does it involve an unreasonable application of, clearly established federal law.

Habeas relief is not warranted on this claim.

### 3. Improper Witnesses

Petitioner alleges that the trial court erred in allowing the State to call Carnelia Fondren

and Pammie Davidson as witnesses. At trial, Krystal was cross-examined by the defense in an

attempt to show that she received significant leniency in exchange for her guilty plea.[8] The

prosecution argued that it was entitled to present evidence concerning the circumstances of the

plea agreement in order to rebut the allegation that Krystal changed her story in order to get a

plea deal. (*See* SCR vol. 7, 659-61). In order to rebut the allegation, the State called Krystal's

counsel, Carnelia Fondren, to testify about the circumstances of the plea agreement. (*Id.*).

On direct appeal, Petitioner argued that Fondren's testimony should have been excluded

due to the State's failure to properly identify her as a witness prior to trial, that her testimony was

improper as a prior consistent statement, and that Fondren gave improper opinion testimony.

*Grose*, 80 So. 3d at 829. The court found that the discovery-violation issue was waived. *Id*. at

830. It further found that the State was allowed to present rebuttal evidence to the defense's

---

[8] Krystal pleaded guilty and was sentenced to serve twenty years imprisonment, with ten
years to serve and ten years suspended. (*See* SCR vol. 7, 668).

assertion that Krystal had motivation to fabricate a story against the defendants. *Id.* The court noted that Fondren testified that Krystal initially denied any involvement in abusing B.J., but that she later admitted her guilt after Fondren and Krystal established a relationship. *Id.* It noted that the State later offered a recommended sentence in exchange for Krystal's cooperation against the defendants, and that Fondren believed Krystal was justified in entering a guilty plea to the charges based on her admission of involvement. *Id.* The court found Fondren's testimony "proper rebuttal to the defense's charge of recent fabrication, and it was not a bolstering of witness credibility." *Id.*

Pammie Davidson, the victim's assistance coordinator for the district attorney's office, helped prepare Krystal for trial. The State questioned Davidson about prior statements Krystal made regarding the defendants, and the defense objected on the ground of hearsay. The trial court allowed Davidson's testimony, however, as a prior consistent statement under Mississippi Rule of Evidence 801(d)(1)(B). On direct appeal, the Mississippi Court of Appeals noted that Johnny did not object to Davidson's testimony at trial, but it addressed the merits of the claim since Tim had objected. *Grose*, 80 So. 3d at 829. The court noted that it had previously held that "a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive was admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it was inadmissible if made afterwards." *Id*., citing *Owens v. State*, 666 So.2d 814, 816 (Miss. 1995). Based on its review of the record, the court found that "Davidson was allowed to testify about the disclosures Krystal made to her while she was preparing Krystal for trial." *Id.* Noting that Krystal's statements to Davidson occurred after Krystal entered her guilty plea, the court found that Davidson's testimony did not qualify as prior

16

consistent statement based on the law. *Id.* The admission of her testimony was found to be

harmless error however, as "outside of Davidson's testimony, there was other substantial proof"

of B.J.'s allegations against the defendants. *Id.*

As the Court has previously discussed, the admissibility of evidence is a matter of state

law, which will not form the basis for federal habeas relief unless the erroneous admission of

prejudicial evidence rendered the entire trial fundamentally unfair. *See Edwards v. Butler*, 882

F.2d 160, 164 (5th Cir. 1989). In order to obtain habeas relief, Petitioner must show that the

erroneous ruling was a "crucial, critical, or highly significant factor" in the context of the entire

trial. *See, e.g., Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987). Here, the State court

found no error with regard to the admission of Fondren's testimony, and it found that the

admission of Davidson's testimony was harmless error. In light of the record as a whole, the

Court finds that the testimony offered by Davidson and Fondren did not render Petitioner's trial

fundamentally unfair. The Court otherwise finds that the decision rejecting Petitioner's claim is

not contrary to, nor does it involve an unreasonable application of, clearly established federal

law. The Court further finds that the decision is not based on an unreasonable determination of

facts in light of the evidence presented at trial. Habeas relief is not warranted on this claim.

**4. Improper Amendment of the Indictment**

Petitioner argues that his amended indictment improperly expanded the time in which the

offenses occurred. The indictment originally charged that Petitioner committed sexual battery

and touching of a child for lustful purposes in particular months, but the trial court later allowed

the state to amend the indictment to charge that the offenses occurred "from May to October

2005." (*See* SCR vol. 1, 41-43; SCR vol. 9, 922-26).

17

At trial, the defendants objected to the proposed amendment. The prosecutor argued that the proof was in conformance with the requested amendments, and that the proof was admitted without objection from the defendants. (SCR vol. 9, 925-26). The trial court ultimately allowed the amendment, stating:

> There's been no demonstrated compromise in the defendant's ability to defend the case based upon the fact that the indictment originally alleged a general time frame for these offenses; and further, the Court believes that it's not a matter of substance and that it is a matter of form and it does conform with the proof in this case[.]

(*Id.* at 926).

On direct appeal, the Mississippi Supreme Court found that the amendment was one of form, as "[t]ime is not an essential element of the crimes of sexual battery, gratification of lust, and child abuse." *Grose*, 80 So. 3d at 827. Finding that the defendants were not prejudiced by the amendment to the indictment, the court found the issue without merit. *Id*.

The sufficiency of a state indictment does not form a basis for federal habeas relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003). Because the State court has found the Petitioner's indictment sufficient under State law, this Court "need not address" the issue. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citations omitted). Nonetheless, the Court notes that Mississippi law provides that "[a]n indictment for any offense shall not be insufficient for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly[.]" Miss. Code Ann. § 99-7-5. The Mississippi Supreme Court has held that "[t]he relevant question is whether amending the indictment to correct the date of the offense amounts to a defect of form or substance.

18

Resolution of that question depends on the facts of the case and the context of a defendant's theory of the case." *Leonard v. State*, 972 So. 2d 24, 28 (Miss. 2008). At trial, Petitioner argued that he never touched B.J. inappropriately at all, so the amendment did not have any material effect on the viability of his defense. The Court finds that the decision rejecting this claim is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. It further finds that the decision rejecting this claim is not based on an unreasonable determination of facts in light of the evidence presented. Federal habeas relief is not warranted.

### 5. Weight and Sufficiency of Evidence - Sexual Battery Conviction

Petitioner challenges the weight and sufficiency of the evidence for his sexual battery convictions. On appeal, the Mississippi Court of Appeals examined the evidence in the light most favorable to the prosecution and upheld Petitioner's convictions as "not contrary to the overwhelming weight of the evidence." *Grose*, 80 So. 3d at 832.

A challenge to the sufficiency of the evidence forms a basis for federal habeas relief only when the evidence, viewed in the light most favorable to the State, is such that no reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (quotations omitted). Under this standard, the fact-finder may find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992); *see also United States v. Surtain*, 519 F. App'x 266, 274, 2013 WL 1846625 at *6 (5th Cir. May 2, 2013) ("The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilty, so long as a reasonable trier of fact could find that the evidence established guilty beyond

a reasonable doubt.") (citation omitted)).

A person is guilty of sexual battery under Mississippi Code Ann. § 97-3-95(1) "if he or she engages in sexual penetration with: . . . (d) [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." Krystal testified at trial that she helped Petitioner sexually penetrate B.J. Petitioner's argument is essentially an attack on Krystal's credibility, which was a matter for the jury's determination. *Schlup v. Delo*, 513 U.S. 298, 300 (1995) ("Under *Jackson*, assessment of credibility of witnesses is generally beyond scope of review). Moreover, Krystal's testimony is corroborated by B.J.'s statements to her grandmother and therapist. Under the statute, even slight penetration of the vagina, vulva, or labia is sufficient to constitute sexual battery. *See Pierce v. State*, 2 So. 3d 641, 647 (Miss.Ct.App. 2008). The proof in the record shows that a reasonable trier of fact could have found the essential elements of sexual battery were proved beyond a reasonable doubt. The rejection of Petitioner's claim was not "objectively unreasonable," and habeas relief is not warranted. *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (holding that *Jackson* claims "are subject to two layers of judicial deference," and that habeas relief may be granted only upon a finding that the rejection of the claim was "objectively unreasonable").

## 6. Arguments in Co-Defendants' Briefs

In his sixth ground, Petitioner states that he "incorporates by reference any relevant arguments made in the briefs submitted by Glen Grose and/or Timothy Jordan." (ECF no. 1, 6). This conclusory argument is insufficient to warrant federal habeas relief. *See Schlang v. Heard*, 691 F.2d 796, 798 (5ᵗʰ Cir. 1982) (collecting cases).

20

**Certificate of Appealability**

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief.  28 U.S.C. § 2253(c)(1).  A COA will not issue unless Petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which Petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  To obtain a COA on a claim that has been rejected on procedural grounds, Petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.  Applying this standard, the Court concludes that a COA should be granted as to Petitioner's claim that his Sixth Amendment Confrontation Clause rights were violated.  A COA is denied as to all other claims.

**Conclusion**

It is hereby ordered that Petitioner's petition for a writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE**.  A certificate of appealability is **GRANTED** as to Petitioner's Confrontation Clause claim (Ground One).  A COA is **DENIED** as to all remaining claims.  All pending motions are **DISMISSED AS MOOT**.  A judgment in accordance with this opinion and order will issue today.

**SO ORDERED, THIS** the 24th day of January, 2014.

/s/ Michael P. Mills
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

21